The court called the next case, please. Mr English. Good morning. Please, the court, the case before this court today involves the construction of the last law and testament of Marie Burnett. The trial court granted summary judgment in favor of the estate, determining that the will of the decedent and the codicil thereto could be construed in such a manner so that no portion of the decedent's estate would pass by in testament. The appellate believes that the court was in error in its construction of the decedent's will. Specifically, the court, in reaching its conclusion, ignored the plain and simple language upon which the disposition of the residue of the decedent's estate was conditioned. Article 4 of Marie Ernest Will sets forth a specific condition upon which the disposition of the residue follows as predicated. She explicitly states that in the event my beloved husband survives me, then, and in that event, all the rest, residue, and remainder of my estate I give devise and decree to the First National Bank in Peru, Illinois, in trust. All the dispositive provisions contained in Article 4 and Article 6 are subject to that condition. Since the decedent's husband, Paul Arnott, pre-deceased her, the issue before us today is whether the trust created under Article 4 ever came into existence and whether the distribution of property upon termination of that trust as set forth in Article 6 is valid since those distributions are to occur upon the termination of the trust created under Article 4. As the trial court in this opinion notes, the principal rule of testamentary construction is to ascertain and give effect to the testator's intent by examining the will as a whole and, if at all possible, to arrive at a construction which will render all parts of the will compatible and prevent incestacies, citing Wise v. First National Bank in Greenville. The court in Wise also addresses or tells us that unless a contrary intention is clearly expressed, it will be presumed that a testator intended to dispose of his property by will, and that presumption is so strong that any reasonable construction will be adopted to avoid the opposite result. It's to be noted that this statement is prefaced by the clause which says unless a contrary intention is clearly expressed. While Wise instructs the court to avoid incestacy in construing a will, that case doesn't stand for the proposition that a court may ignore parts of a will in its construction. The FLE has suggested that Wise is legally and factually identical to the present case. That representation is incorrect. The testator in Wise not only anticipated the possibility of his wife's pre-deceasing him, but provided for the disposition of assets both at his death and at the death of the survivor of the two of them. The testamentary trust established under Mr. Wise's will was to be created in any event as there was a third party beneficiary of that trust. One of the principal rules in construing testamentary documents is to carry out the intention of the testator as set forth in the document. All of the language contained in a will and each of the terms and conditions set forth therein has to be given appropriate weight. While there is a presumption against incestacy, and a court should make every effort to construe the will to avoid it if that is possible, a court does not have the power to write a new will for a decedent if it cannot determine his or her intent from the language of the will. A court may adopt any reasonable construction of a will under the presumption that a decedent intends to dispose of all property rather than to leave any portion to pass by incestacy, but when a testator overlooks a particular event which had occurred to him or her would have been provided for, the court may not indulge in conjecture to supply intent which isn't expressed in the document. In 1999, Mrs. Earnett reviewed her will, found certain provisions which she desired to change, and executed a codicil to accomplish those changes. This occurred five years after her husband's death. Although we assume that she knew her husband was dead and amended the appointment of the executor in view of that fact, she did not modify the conditions set forth to the establishment of the trust under Article IV, the language being, in the event my beloved husband survives me. She did not delete any of the other provisions of Articles IV, V, or VI other than to change the devise to the appellant to a life estate, even though those three articles collectively established the trust which we are talking about here this morning, and that trust was established for the sole and exclusive benefit of her then deceased husband. If she had intended to alter the dispositive scheme in view of his death, it would have been logical for her to delete those provisions and substitute whatever dispositive scheme she desired in their place. But in fact, she ratified and confirmed the language of Article IV with its conditions preceding, retained Article V, and kept the language found in the introduction to Article VI, which directs her trustee to make the distribution of her estate. The fact that she could have made a number of other changes but did not do so does not alter the impact of the language which she chose to leave in her document. She had the opportunity to change it, and for whatever reason, chose not to do so. Maybe she thought it wasn't necessary. Article VI is what's to be done in the event her husband should pre-decease her. Is that not correct? I believe that is not correct, Your Honor. Article VI is talking about... After the death of my beloved husband. After the death of my beloved husband. My trustee shall. Okay, but then Article XI gives the executor all of the powers of the trustee. Doesn't that suggest that she envisioned the possibility that he was going to pre-decease her? I don't think... And that the trust would not be created? I don't think that Article XI can be construed in that manner, Your Honor. Article XI is a very common provision found in Wills, which in effect gives to the executor the same powers as given to the trustee. And the principal purpose for inserting that kind of a provision in the document is to avoid a laborious recitation of the powers of the executor, when many of those may be the same powers as given to the trustee previously enumerated in the document. But the effect is to give the executor the powers that the trustee had, had the trust been created. Certainly. Okay. Certainly. Does that answer your question? Well, yeah. Okay. The trial court stated that it would undertake any reasonable construction to avoid intestacy. It examined the codicil and the decedent executed five years after her death, which deleted her husband as executor. It changed the terms of the device of the appellant, but it then ratified and reaffirmed the remaining terms of her will. The trial court concluded that by ratifying and reaffirming all the other provisions of the will, the decedent had considered Article IV and intended and understood that that article constituted the disposition of the estate. But to reach that conclusion, the court simply had to ignore the preparatory language to Article IV, which was the survival of the husband. That language is plain and unambiguous. It isn't contradicted anywhere else in the will, isn't changed by the codicil, and in fact is republished by the codicil. Now, why she chose to do that, I don't know, but the fact of the matter is that's the document that she signed. To me, it would have been more logical to have deleted Articles IV, V, and VI and substituted a new article to replace those if that's what she intended to do. But she didn't do it. The trial court adopted the argument of the appellee that several provisions of the will of Marie Ernest support the conclusion that she intended to provide in her will for the disposition of her property if her husband pre-deceased her. The court points to Article II, which provides for the disposition of the household and personal effects, providing that if her husband pre-deceases her, that's to pass as part of the residue. It should be noted that Article II speaks to the residue and doesn't cross-reference any section of the will as constituting a residuary disposition. It's also noted that the dispositive provisions of Article VI are to take effect after the death of my beloved husband. And finally, it's claimed that the provisions of subsections D and F, there being no E in Article VI, constitute a disposition of the residue standing apart from subsections A to C, which speak to my trustee distributing certain assets. The theory that subsection F should stand alone as a residuary clause can make sense only if you ignore the language contained in Article IV, which provides for the disposition of the rest of the residue and remainder to my named trustee. And again, the introductory language to Article VI talks about the trustee distributing the estates of state, not my executor. We believe that this is consistent with the appellant's view that Article IV, together with Articles V and VI, collectively constitute and create a trust which the decedent intended to fund and create with the residue of her estate, which was to be created only if her husband survived. If he did not survive, she did not express what was to be the disposition of the residue of her estate. The appellee has cited numerous cases in support of various aspects of its case. We, too, have cited a number of cases. All these cases have factual variations which makes them distinguishable from the cause before this court. Therefore, we do not believe that any of these cases provide conclusive authority as to the proper result here. Ultimately, the test of construction that the court must look at is to examine all parts of the will and arrive at a construction which will render all parts of the will and the codicil compatible if there is a reasonable construction that incorporates those parts and a contrary intent is not found. What's our standard of review? This is a de novo review, Your Honor. The trial court ignored the principle rule of construction applicable to testamentary construction that it must reconcile all parts of the will, and if that can't be done on a reasonable basis, then the court must conclude that the will is ineffective in disposing all of the decedent's estate. The trial court, in its effort to avoid intestacy, removed or ignored the condition upon which Article IV is predicated, namely the survival of the decedent's husband. In doing so, under the guise of construction, it engaged in the practice which the court in Fosby State Bank and Trust Company condemned, namely reading into the will a provision which Marie Arnott might have made had she thought of it. Whether that omission is an oversight on her part or was a scrivener's error, the fact is the same. Where there is no doubtful or ambiguous meaning involved and no intention is expressed elsewhere in the will, there is nothing that could authorize the court to supply an intent which the decedent failed to express. To determine the intent of the testator, the court can only look to the words actually used. All words in the will, every phrase, every clause must be given effect if possible. Where the language is clearly expressed, the court can't change that language but can only interpret it, even if doing so will result in a partial or complete intestacy. Even if the scheme of distribution is illogical or peculiar, the court must still enforce the intention as shown in the language used. Courts can't make a new will for a testator under the guise of will construction. Nor can a court distribute an estate according to its sense of justice and equity, ignoring the terms clearly expressed in the will. Here the trial court reviewed the will of Marie Arnott and her codicil and concluded that she intended to have her estate passed under the provisions of Article IV and VI in all events. It ruled that the condition preceding to the creation of the trust under Article IV should be ignored as a result of the codicil. It also concluded that some paragraph F of Article VI constituted a residual clause. In so doing, the court failed to give effect to the language and intent of Article IV, as well as the introductory language in Article VI, which directs the trustee to distribute the assets of the estate, both being adopted and republished by the codicil. Even though the scheme of distribution may seem illogical, it is nonetheless the plan that the court must enforce. We believe the trial court distributed the decedent's estate according to its sense of justice and equity, rather than according to the intent expressed in the will. Thus, the order of the trial court granting summary judgment in favor of the appellee should be reversed, and the trial court should be directed to grant appellant's motion for summary judgment. Thank you. Thank you, Mr. English. Mr. Grant. Good morning. May it please the court, counsel. The issue presented here today is whether the trial court correctly entered summary judgment in favor of the Executive Bernard Herman upholding Marie Arnott's last will and testament of codicil. You will note that we were here not that long ago, again, because of Francis Holden's claim that the trial court was incorrect because Francis Holden did not like the way Marie Arnott planned her estate. We are here again today for that very reason. The common thread that runs throughout this estate is that Francis Holden does not like how much Marie Arnott left him from her estate. His attempt today is to have you overturn Judge Prezzati's ruling that Marie Arnott's last will and testament and codicil are valid. Francis Holden claims there are certain portions of Marie Arnott's will that are not valid, because she did not consider the possibility of her husband predeceasing her. That is simply not true. Francis Holden would prefer that Marie Arnott's estate pass into testing, and then because of Article 12, which disinherits his two sisters, Francis Holden would be the sole beneficiary of this $5 million estate. The will construction case was filed by Francis Holden on March 28, 2007. It was discussed and briefed over a two-year period. Judge Prezzati gave considerable thought and attention to this matter and handed down a thorough, informed, well-reasoned, 18-page ruling on March 27, 2009. That report of proceedings reads like an appellate court opinion. Judge Prezzati articulated, as he referred to his template in construing the will, quote, I'm going to state, once again, the following. My job is to look at the language of the will and the codicil as a whole and determine if there is a reasonable construction of a will to avoid intestacy. I must give effect to the intent of the testator by examining the will as a whole and the codicil as the Knight case indicated, and if at all possible, that's what the Supreme Court tells us. If at all possible, Judge Prezzati, you must arrive at a construction that will render all parts of the will and codicil compatible if you have a reasonable construction and a contrary result is not clearly expressed. That's my template, end quote. Judge Prezzati's template is correct and in line with the case law as set forth in Wise, Knight, Foss, and many other cases cited in our brief. Wise cited by both Bernard Arden and Francis Vogel provides that, and I don't mean to repeat Mr. English, but the cardinal rule of testamentary construction is to ascertain and give effect to the testator's intention by examining the will as a whole and, if at all possible, to arrive at a construction which will render all parts thereof compatible and thus prevent intestacy. Unless a contrary intention is clearly expressed, it will be presumed that a testator intended to dispose of his property by will and this presumption is so strong that any reasonable construction would be adopted to avoid an opposite result. That is what Judge Prezzati did. If, for a very brief moment, for argument's sake, you would accept Francis Vogel's claim that Marie Arnott did not consider the possibility of her husband pre-deceasing her in her 1999 will, that argument can be disposed of quickly based upon Marie Arnott having executed the codicil to her 1991 will in 1999, some six years after her husband Paul Arnott passed away. Today is the 16th anniversary of Paul Arnott's passing. Judge Prezzati commented during his ruling in March of 2009, quote, it's a significant point to point that out. He was dead. There was no one contesting her competency as an individual. She obviously knew he was dead. I take the fact his death was obvious to her as something that is self-evident. So what did she do in 1999? End quote. Judge Prezzati was careful throughout his recent decision to use Marie Arnott's words, not his, in determining Marie Arnott's intent. Quoting Judge Prezzati again, quote, her words, not mine. Preamble. I hereby amend my last will and testament dated November 20th, 1991, by leaving there from Article 9 in its entirety by amending Article 7 of Paragraph B, Article 8, to read as follows. End quote. After Judge Prezzati commented on those articles, he stated, the point I'm making here is this lady in 1999, specifically after knowledge of her husband's death, deleted and amended certain portions, provisions of her last will and testament. She did that. Further, in her words, her own words, she says in a ratification clause, I hereby ratify and confirm in all other respects my last will and testament dated November 20th, 1991. Those are her words, not mine. I must give meaning to her words. End quote. Everyone knows Marie Arnott's intent in distributing her estate, even Francis Vogel. The problem is Francis Vogel wants Marie Arnott's entire estate, not just the 120 acres he was devised by Marie Arnott. Judge Prezzati commented that he had the, quote, benefit of having the last will and testament of Marie's husband. Look at those wills. They are identical in the depository provisions. They leave the same amount of money for God and church. They leave the same farms, the same acreage to individuals involved, and of course I'm trying to ascertain the intent of the parties. Marie Arnott never changed a depository provision, even after her husband's death. She could have, but she did not. That is certainly significant in relation to what was her intention, was, and her will. As previously quoted from Wise, the primary rule of testamentary construction is to ascertain and give effect to the testator's intention by examining the will as a whole, if at all possible, to arrive at a construction which renders all parts compatible and thus prevent intestacy. Unless a contrary intention is clearly expressed, you presume that testators tend to dispose of his property by will, and this presumption is so strong that any reasonable construction would be adopted to avoid an opposite result. Since Francis Bobo has tried to overturn the trial court's ruling, he has the privilege of filing not only with you an appellate's brief, but also a reply brief. In that reply brief, Francis Bobo did not present any new case law to support his own personal position of wanting the entire estate. He did not claim the case was improperly interpreted by Judge Brazati. The sum of Francis Bobo's reply brief is that he takes issue with Judge Brazati for stating, quote, I must also employ common sense, end quote. Francis Bobo would prefer that anyone that disagrees with him should not employ their common sense. The task at hand is to determine Maria Ernst's intention. Judge Brazati looked to her will, to her codicil, and to the very words that she used. According to Judge Brazati, in his ruling he said, quote, no surmise, no conjecture, no speculation. Maria Ernst's words are the best evidence of her intention. Judge Brazati used those very words in order that Maria Ernst's will and codicil should be upheld and her estate should not pass in testing. I would ask this court to affirm the trial court's holding. Thank you. Questions? Thank you, Mr. Brandt. Rebuttal, Mr. English? Just a couple of points, Your Honor. Before you get started, let me ask you a question. Do you agree with that, that if this estate passes through a test to see that your client gets it all? We believe that there are other heirs of law who would take a portion of the estate above and beyond our client. Okay, because if that were the case, when she made the codicil, why wouldn't she just say, I leave everything, since the king of her husband was dead? Is that what her intent? Why wouldn't she just say, I give everything to the righteous folk? Well, it's beyond me as to when looking at that will in 1999, why she wouldn't have made the other changes above and beyond those that she did. We'll never know. Because the logic of what should have happened seems clear, and it didn't. Well, except also, I mean, the other side of that question is, if she wanted your client to have more, why didn't she say that in 1999? I don't know. She knew who her intestate takers would be. And, Justice, you mentioned the provisions of Article 11, I believe, regarding the powers of the trustee being granted to the executor. The powers of the trustee are administrative to administering the trust, but they're not the same thing as the power of appointment given to distribute the assets of the estate. And, again, I would emphasize that the dispositive provisions of Article 6 are all predicated upon Article 4. That is where the residue flows down through the dispositive scheme, as set forth. And you've got the language talking about, if my husband survives me, giving a life estate, in effect, to the husband. And I would also mention to the Court that, you know, Judge Versailles said, well, he looked at the will of Paul Arnett and also the will of Marie Arnett. Both wills have the same problem. Paul Arnett's will has the exact same hole in it, if you will, that Marie Arnett's does, and that is that it talks about the survivorship of Marie, but doesn't clearly indicate what's to happen if she predeceases him. Mr. English, is there any doubt in your mind about what Marie Arnett wanted to have happen with this property? There's considerable doubt. Is there any doubt, based on the language of her will, what she intended to have happen to this property? I think that there is, because, you know, why would she leave in that provision, knowing full well that her husband had left this earth five years earlier? I mean, I don't know the answer to that. It seems like it's because she thought the codicil took care of it. Well, it is, quite frankly and glumly, is that more poor lawyering as opposed to poor drafting? Well, people depend on their lawyers to write these things. No doubt about that. But whether it's poor lawyering or whether that was her intent, I mean, that's the language that she left. And that's what we're stuck with trying to determine what's the appropriate disposition based upon that document and the language that's employed. Whether that was her intent or whether that was the scrivener not clearly expressing what her true wishes were, we'll never know. Any more questions? Thank you. We thank both of you for your argument this afternoon, this morning. We will take the matter under advisement and will issue a written decision as quickly as possible.